**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| DOUGLAS GOODE, SR, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GFL OF VIRGINIA, LLC.,<br><br>Defendant. | Case No. 3:26CV893 |

# COMPLAINT

## Summary

1. Douglas Goode, Sr. ("Goode" or "Plaintiff") brings this class and collective action to recover unpaid wages and other damages from GFL of Virginia, LLC ("GFL" or "Defendant").

2. Goode worked for GFL in Virginia.

3. Goode and the other Waste Disposal Employees (defined below) regularly worked more than 40 hours in a week.

4. GFL paid Goode and the other Waste Disposal Employees by the hour.

5. But GFL did not pay them for all the hours they work.

6. Instead, GFL automatically deducted 30 minutes a day from these employees' hours for so called "meal periods" (GFL's "auto-deduction policy")

7. Goode and the other Waste Disposal Employees were thus not paid for this time.

8. But Goode and the other Waste Disposal Employees did not actually receive *bona fide* meal breaks.

9. Instead, GFL required Goode and the other Waste Disposal Employees to remain on duty and perform compensable work along their routes throughout their shifts, including during unpaid "meal periods."

10. GFL's auto-deduction policy violated the Virginia Overtime Wage Act (VOWA) and Fair Labor Standards Act (FLSA) by depriving Goode and the other Waste Disposal Employees of wages, including overtime wages at the required rate for all overtime hours worked.

11. Likewise, GFL's auto-deduction policy violates the Virginia Wage Payment Act (VWPA) by depriving Goode and the other Waste Disposal Employees of earned wages at their agreed hourly rates for all hours worked.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has general personal jurisdiction over GFL because GFL is a Virginia corporation.

15. Venue is proper because GFL maintains its principal place of business in West Point, Virginia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16. Goode worked for GFL as a sanitation worker (a position sometimes colloquially referred to as a "garbageman") from approximately 2021 until February 6, 2026.

17. Throughout his employment, GFL classified Goode as non-exempt and paid him by the hour.

18. Throughout his employment, GFL subjected Goode to its auto-deduction policy.

19. But throughout his employment, Goode did not actually receive *bona fide* meal breaks.

20. Goode brings this action on behalf of himself and other similarly situated hourly GFL Waste Disposal Employees who were subject to GFL's auto-deduction policy.

21. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly GFL sanitation workers in Virginia who received a meal period deduction during the past 3 years through final resolution of this action ("FLSA Collective Members").**

22. The putative Virginia class of similarly situated employees is defined as:

> **All hourly GFL sanitation workers in Virginia who received a meal period deduction during the 3 years prior to the filing of this complaint through final resolution of this action ("Virginia Class Members").**

23. The FLSA Collective Members and Virginia Class Members are collectively referred to as the "Waste Disposal Employees."

24. GFL is a Virginia corporation that maintains its headquarters in West Point, Virginia.

25. GFL may be served with process by serving its registered agent: **CT Corporations System at 4701 Cox Rd. Ste 285, Glen Allen, VA 23060**, or wherever s/he may be found.

## COVERAGE UNDER THE FLSA

26. At all relevant times, GFL was an "employer" of Plaintiff, and others similarly situated, that is engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(d).

27. At all relevant times, GFL was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

28. At all relevant times, GFL was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

29. At all relevant times, GFL had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30. At all relevant times, Goode and the other Waste Disposal Employees were GFL's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

31. At all relevant times, Goode and the other Waste Disposal Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

32. On information and belief and reasonable inquiry, GFL appears to be a Virginia-based subsidiary of a publicly traded company "providing comprehensive solid waste management services from its platform of facilities throughout Canada and 18 U.S. states." The company employs over 15,000 people.[1] These include garbagemen, like Goode and those similarly situated, who collect refuse and operate GFL's garbage trucks.

33. To meet its business objectives, GFL hires workers, including Goode and the other Waste Disposal Employees, to collect refuse and operate its garbage trucks

34. GFL maintains control, oversight, and direction of Goode and the Waste Disposal Employees, including, but not limited to, hiring, firing, disciplining, and other employment practices, regardless of the specific GFL facility from which they work.

---

[1] https://investors.gflenv.com/English/home/default.aspx (last visited July 8, 2026).

35. GFL requires Goode and the Waste Disposal Employees to follow its uniform policies and procedures regardless of facility.

36. Goode's and the Waste Disposal Employees' work must adhere to the uniform quality standards put in place by GFL.

37. GFL supervised and controls Goode's and the Waste Disposal Employees' patient care work and prohibits these employees from straying from its uniform procedures, plans, protocols, and specifications.

38. GFL controlled Goode's and the other Waste Disposal Employees' rates and methods of pay, their schedules and assignments, as well as their patient care work.

39. GFL possessed the authority to hire, fire, and discipline Goode and the other Waste Disposal Employees.

40. Without the work Goode and the Waste Disposal Employees perform, GFL would not be able to complete its business objective of operating garbage trucks and collecting refuse from the homes and businesses of its customers.

41. Thus, Goode's and the Waste Disposal Employees' work was integral to GFL's business objectives.

42. In sum, GFL employs Goode and the other Waste Disposal Employees on vehicles and at facilities it owns and operates, subject to the same or similar policies, procedures, and expectations.

43. GFL uniformly classifies these employees, including Goode and the Waste Disposal Employees, as non-exempt and pays them by the hour.

44. While exact job titles and precise job duties may differ, GFL subjects them to the same or similar pay practices for similar work.

45. For example, Goode worked for GFL as a driver for GFL out of its Chester, Virginia facility, and prior to that at its Midlothian, Virginia facility.

46. As a driver, Goode's job duties included working with a team to operate GFL garbage trucks along a pre-set route collecting refuse from GFL customers.

47. Throughout his employment, GFL paid Goode by the hour.

48. Goode typically worked over 40 hours a week. He worked approximately 12-13 hours a day "on the clock" (4am to 4 or 5pm) Monday through Friday and then for about 7 or 8 hours (2 or 3am to 9 or 10am) on every 4th Saturday.

49. Throughout his employment, GFL subjected Goode to its auto-deduction policy, deducting 30 minutes each workday for so called "meal periods."

50. But throughout his employment, Goode did not actually receive *bona fide* meal breaks.

51. Goode and the Waste Disposal Employees performed their jobs under GFL's supervision and direction and with GFL vehicles and tools.

52. GFL required Goode and the Waste Disposal Employees to follow and abide by common work, time, pay, "meal period," and overtime policies and procedures in the performance of their jobs.

53. Each day they worked, Goode and the Waste Disposal Employees clock in/out at GFL's dispatch office.

54. At the end of each pay period, Goode and the Waste Disposal Employees received wages from GFL that were determined by common systems and methods that GFL selects and controls.

55. GFL required Goode and the Waste Disposal Employees to record their "on the clock" hours worked using GFL's designated timekeeping system.

56. Like Goode, the other Waste Disposal Employees work similarly long hours.

57. Up through the date Goode was terminated, GFL subjected Goode and the Waste Disposal Employees to its common auto meal deduction policy.

58. Specifically, GFL automatically deducted 30 minutes a workday from Goode's and the other Waste Disposal Employees' recorded hours and wages for so called "meal periods."

59. GFL automatically deducted this time regardless of whether Goode and the Waste Disposal Employees actually received full, uninterrupted, 30-minute meal breaks.

60. On or about March 1, 2026, GFL began requiring a lunch break actually be taken and logged in on the TRUX system on the tablet computers traveling with the garbage trucks and that the garbage trucks be stopped for 30 consecutive minutes.

61. Prior to March 1, 2026, Waste Disposal Employees were not required to clock in or out for lunch and were similarly not required to mark their lunches in TRUX.

62. Prior to March 1, 2026, GFL knew or had constructive knowledge that Goode and the Waste Disposal Employees did not receive *bona fide* meal breaks each shift they worked.

63. Prior to March 1, 2026, Goode and the Waste Disposal Employees did not actually receive *bona fide* meal breaks.

64. Instead, Goode and the Waste Disposal Employees remained on duty on their route(s) and perform compensable work throughout their shifts for GFL's predominant benefit, including during their "meal periods" and/or while they consume any meals.

65. Thus, Goode and the Waste Disposal Employees were not free to engage in personal activities during their unpaid "meal periods."

66. Rather, during their unpaid "meal periods," Goode and the Waste Disposal Employees performed their regular job duties and responsibilities with GFL's knowledge or constructive knowledge.

67. Thus, Goode and the Waste Disposal Employees routinely spent their unpaid "meal breaks" performing work for GFL's—not these employees'—predominant benefit.

68. The garbage trucks used by Goode and the Waste Disposal Employees on their routes are equipped with tablet computers outfitted with the TRUX system that tracked their progress, mileage, and stop time(s) along the route.

69. Through the data captured by the tablet, along with GPS trackers in each garbage truck, GFL had access to real time data about how long a route took, where a route went, how long it took to for customer stops, and when and how long a route remained stopped at customer stops or during any supposed break period.

70. GFL supervisors were aware that Goode did not take lunch breaks. When he was questioned in 2025 by his supervisor David Holdensen about low productivity numbers, Goode replied that he didn't understand how and that he didn't "even take lunch breaks." Mr. Holdensen replied to the effect that Mr. Goode must be "slacking off" on the route.

71. This unpaid time is compensable under the FLSA and Virginia law because GFL knew, or should have known, that (1) Goode and the Waste Disposal Employees were performing unpaid work during their "meal periods," (2) they were interrupted with work duties during any attempted "meal period," (3) they were not completely relieved of all duties during their "meal periods," (4) they entirely skipped the "meal period" due to work demands, (5) the "meal period" was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their "meal periods" because of work interruptions, (7) they remained in GFL's vehicles and/or

servicing GFL clients, or under GFL's supervision, and/or (8) they spent their unpaid "meal periods" substantially performing their regular duties for GFL predominant benefit.

72. GFL failed to exercise its duty as Goode's and the Waste Disposal Employees' employer to ensure these employees are not performing work that GFL does not want performed during their unpaid "meal periods."

73. GFL knew Goode and the other Waste Disposal Employees routinely performed work "off the clock" during their unpaid "meal periods" because GFL expects and requires them to do so.

74. On information and belief, other Waste Disposal Employees complained to GFL management and their supervisors about working during their unpaid "meal periods."

75. Thus, GFL required, requested, suffered, or permitted Goode and the Waste Disposal Employees to work during their unpaid "meal periods."

76. Despite accepting the benefits, GFL did not pay Goode and the Waste Disposal Employees for the compensable work they performed during their automatically deducted "meal periods."

77. Thus, under GFL's uniform auto-deduction policy, Goode and the Waste Disposal Employees were denied overtime pay for on duty "meal periods" during workweeks in which they work more than 40 hours, in violation of the FLSA and VOWA.

78. The Waste Disposal Employees are thus uniformly subject to the same or similar unlawful policies—GFL's auto deduction policy—for similar work, in willful violation of the FLSA and Virginia law.

## Class and Collective Action Allegations

79. Goode brings his claims as a class and collective action on behalf of himself and the other Waste Disposal Employees.

80. The Waste Disposal Employees were victimized by GFL's auto deduction policy.

81. Other Waste Disposal Employees worked with Goode and indicated they were paid in the same manner, performed similar work, and were subject to GFL's same or similar auto deduction policy.

82. Based on his experience with GFL, Goode is aware that GFL's auto deduction policy was imposed on other Waste Disposal Employees.

83. The Waste Disposal Employees are similarly situated in the most relevant respects.

84. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime.

85. Therefore, the specific job titles or precise job locations of the various Waste Disposal Employees do not prevent class or collective treatment.

86. Rather, the putative collective is held together by GFL's uniform auto deduction which systematically deprived Goode and the Waste Disposal Employees of overtime wages for hours worked in excess of 40 in a workweek.

87. GFL's failure to pay overtime wages as required by the FLSA and VOWA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Waste Disposal Employees.

88. GFL's records also show that it automatically deducted 30 minutes a day from the Waste Disposal Employees' recorded work time for "meal periods."

89. Likewise, GFL's records show the specific time the Waste Disposal Employees punched in and out for the shifts.

90. The back wages owed to Goode and the other Waste Disposal Employees can therefore be calculated using the same formula applied to the same records.

91. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to GFL's records, and there is no detraction from the common nucleus of liability facts.

92. Therefore, the issue of damages does not preclude class or collective treatment.

93. Goode's experiences are therefore typical of the experiences of the other Waste Disposal Employees.

94. Goode has no interest contrary to, or in conflict with, the Waste Disposal Employees.

95. Like each Waste Disposal Employee, Goode has an interest in obtaining the unpaid wages owed under federal and Virginia law.

96. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97. Absent this class and collective action, many Waste Disposal Employees likely will not obtain redress for their injuries, and GFL will reap the unjust benefits of violating the FLSA and Virginia law.

98. Further, even if some of the Waste Disposal Employees could afford individual litigation against GFL, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Waste Disposal Employees' claims.

100. The questions of law and fact that are common to each Waste Disposal Employee predominate over any questions affecting solely the individual members.

101. Among the common questions of law and fact are:

a. Whether GFL engaged in a policy and practice of automatic 30-minute deductions for "meal periods" that were not *bona fide*, continuous, and uninterrupted;

b. Whether GFL's auto-deduction policy deprived Goode and the other Waste Disposal Employees of wages for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

c. Whether GFL knew, or had reason to know, Goode and the Waste Disposal Employees were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal periods";

d. Whether GFL's decision not to pay Goode and the Waste Disposal Employees overtime wages for all overtime hours worked was made in good faith; and

e. Whether GFL's violations were willful.

102. As part of its regular business practices, GFL intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Goode and the Waste Disposal Employees.

103. There are many similarly situated Waste Disposal Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

104. This notice should be sent to the Waste Disposal Employees pursuant to 29 U.S.C. § 216(b).

105. Those similarly situated employees are known to GFL, are readily identifiable, and can be located through GFL's business and personnel records.

## GFL's Violations Were Willful

106. GFL knew it was subject to the FLSA's and VOWA's overtime provisions.

107. GFL knew the FLSA and VOWA required it to pay employees, including the Waste Disposal Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

108. GFL knew the Waste Disposal Employees were non-exempt employees entitled to overtime pay.

109. GFL knew the Waste Disposal Employees were paid by the hour.

110. GFL knew its Waste Disposal Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because GFL required these employees to record their "on the clock" hours using its timekeeping system.

111. GFL knew the FLSA and VOWA required it to pay employees, including the Waste Disposal Employees, for all hours these employees performed compensable work.

112. GFL knew that, as the Waste Disposal Employees' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that GFL did not want performed.

113. GFL knew it failed to provide the Waste Disposal Employees with *bona fide*, uninterrupted meal breaks.

114. GFL knew the Waste Disposal Employees did not actually receive *bona fide*, uninterrupted meal breaks.

115. GFL knew the Waste Disposal Employees regularly worked during their unpaid "meal periods."

116. GFL knew it required, requested, suffered, or permitted, the Waste Disposal Employees to work during their unpaid "meal periods."

117. GFL knew the Waste Disposal Employees regularly spent their unpaid "meal periods" substantially performing their regular job duties for GFL's predominant benefit.

118. Indeed, GFL had the technology to know that Waste Disposal Employees were driving in their garbage trucks, and working for the benefit of GFL, during their so-called "meal periods."

119. It was not until on or about March 1, 2026 that GFL began requiring its Waste Disposal Employees to stop their trucks entirely for 30 minutes.

120. Thus, GFL knew, should have known, or recklessly disregarded the fact that the Waste Disposal Employees performed compensable work during their unpaid meal breaks.

121. Nonetheless, GFL automatically deducted 30 minutes a day from the Waste Disposal Employees' recorded work time for "meal periods."

122. In other words, GFL knew, should have known, or recklessly disregarded the fact that it did not pay the Waste Disposal Employees for all the hours they performed compensable work.

123. GFL's decision to automatically deduct 30 minutes a day from the Waste Disposal Employees' recorded work time for "meal periods" was neither reasonable, nor was this decision made in good faith.

124. GFL knowingly, willfully, and/or in reckless disregard carried out this illegal policy that deprived Goode and the Waste Disposal Employees of overtime wages at the required rates for all hours worked after 40 in a workweek and earned wages in violation of the FLSA and Virginia law.

125. GFL knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA and Virginia law.

## <u>COUNT I</u>
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

126. Goode brings him FLSA claim on behalf of himself and the Waste Disposal Employees pursuant to 29 U.S.C. § 216(b).

127. GFL violated, and is violating, the FLSA by employing non-exempt employees (Goode and the Waste Disposal Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid "meal periods."

128. GFL's unlawful conduct harmed Goode and the Waste Disposal Employees by depriving them of the overtime wages they are owed.

129. Accordingly, Goode and the Waste Disposal Employees are entitled to recover the difference between the wages actually paid and the overtime wages actually earned under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE VOWA
### (VIRGINIA CLASS)

130. Goode brings his VOWA overtime claim on behalf of himself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

131. GFL's conduct violates the VOWA. *See* VA. CODE § 40.1-29.2.

132. At all relevant times, GFL was subject to the VOWA because GFL was (and is) an "employer" within the meaning of the VOWA.

133. At all relevant times, GFL employed Goode and the other Virginia Class Members as its covered "employees" within the meaning of the VOWA.

134. Goode and the other Virginia Class Members are non-exempt employees entitled to overtime wages under the VOWA.

135. The VOWA requires employers, like GFL, to pay non-exempt employees, including Goode and the other Virginia Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. VA. CODE § 40.1-29.2.

136. GFL violated, and is violating, the VOWA by failing to pay Goode and the other Virginia Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

137. GFL's unlawful conduct harmed Goode and the other Virginia Class Members by depriving them of the overtime wages they are owed.

138. Accordingly, GFL owes Goode and the other Virginia Class Members the overtime wages at 1.5 times their regular rates for all hours worked over 40 in a workweek, plus an additional amount as liquidated damages. VA. CODE §§ 40.1-29 and 40.1-29.2.

139. Because GFL "knowingly" failed to pay Goode and the other Virginia Class Members the proper premium overtime wages for all their overtime hours worked, GFL owes these employees treble damages in an amount equal to three times their unpaid overtime wages.

140. Finally, Goode and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT III

### FAILURE TO PAY ALL WAGES EARNED UNDER THE VWPA (VIRGINIA CLASS)

141. Goode brings him VWPA claim on behalf of himself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

142. GFL's conduct violates the VWPA (VA. CODE § 40.1-29).

143. At all relevant times, GFL was subject to the VWPA because GFL was (and is) an "employer" within the meaning of the VWPA.

144. At all relevant times, GFL employed Goode and the other Virginia Class Members as its covered "employees" within the meaning of the VWPA.

145. The VWPA requires employers, like GFL, to pay employees, including Goode and the other Virginia Class Members, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular, established paydays. VA. CODE § 40.1-29.

146. During the course of their employment, GFL agreed to pay Goode and each Virginia Class Member an hourly rate for all the hours of work they performed.

147. Goode and each Virginia Class Member accepted GFL's offer.

148. But during the course of their employment, GFL failed to pay Goode and the other Virginia Class Members for all the time they worked at the rates GFL agreed to pay them because GFL failed to include the time they worked during their "meal periods."

149. Thus, GFL violated, and is violating, the VWPA by failing to pay Goode and the other Virginia Class Members all their earned wages (at the rates GFL agreed to pay them) for all the hours of work they performed for GFL's predominant benefit.

150. GFL's unlawful conduct harmed Goode and the other Virginia Class Members by depriving them of the earned wages they are owed.

151. Accordingly, GFL owes Goode and the other Virginia Class Members their unpaid earned wages (at their agreed hourly rates), plus an equal amount as liquidated damages. VA. CODE § 40.1-29.

152. Because GFL "knowingly" failed to pay Goode and the other Virginia Class Members all of their wages, GFL owes these employees treble damages in an amount equal to three times their unpaid wages. VA. CODE § 40.1-29.

153. Finally, Goode and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29.

## JURY DEMAND

154. Goode demands a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Goode, individually and on behalf of the Waste Disposal Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Waste Disposal Employees with instructions to permit them to assert timely FLSA claims in this action by filing individual consents to sue pursuant to 29 U.S.C. § 216(b);

b. An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Goode and his counsel to represent the interests of the Waste Disposal Employees;

d. An Order finding GFL liable to Goode and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding GFL liable to Goode and the other Virginia Class Members for all their unpaid overtime wages owed under the VOWA, plus liquidated damages, and treble damages;

f. An Order finding GFL liable to Goode and the other Virginia Class Members for all their unpaid earned wages owed under the VWPA, plus liquidated damages, and treble damages;

g. Judgment awarding Goode and the other Waste Disposal Employees all unpaid earned wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA, VOWA, and VWPA;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BUTLER CURWOOD, PLC**

By: *<u>/s/ Zev H. Antell</u>*
Harris D. Butler, III (VSB No. 26483)

Craig J. Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
140 Virginia Street, Suite 302
Richmond, VA 23219
Phone: (804) 648-4848
Fax: (804) 237-0413
Email: harris@butlercurwood.com
craig@butlercurwood.com
zev@butlercurwood.com

**ATTORNEYS FOR GOODE & THE WASTE DISPOSAL EMPLOYEES**